UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RUBEN RODRIGUEZ, et al.,<br><br>　　　　Defendants. | No. 2:11-cr-00296-JAM<br><br>**ORDER RE MOTION TO ADMIT EXPERT TESTIMONY CONCERNING MORTGAGE LENDING INDUSTRY STANDARDS** |

I. ADMISSION OF EXPERT TESTIMONY UNDER LINDSEY

Defendants Ruben Rodriguez and Jaime Mayorga ("Defendants") seek to introduce the expert testimony of Professor Shaun Martin on lending industry standards concerning "sub-prime" or "Alt A" mortgage loans during the years 2004 through 2007. Def. Mot. in Limine 4, ECF No. 578. Defendants seek to do so under the rule announced in United States v. Lindsey, 850 F.3d 1009 (9th Cir. 2017). In Lindsey, the Ninth Circuit held that "evidence of individual lender behavior is not admissible to disprove materiality, but evidence of general lending standards in the mortgage industry is admissible to disprove materiality." Id. at 1019. Evidence of a lender's negligence or intentional disregard

1

of relevant information in a loan application is not a defense to wire fraud and is thus not admissible as a defense to mortgage fraud. Id. at 1014-1016. In contrast, "as long as defendants do not stray into evidence of the behavior of individual lenders—for instance, evidence of specific prior bad loans or particular mistakes by underwriters—defendants may attack materiality th[r]ough industry practice." Id. at 1016. Defendant seeks to do so here.

The Government does not dispute that the Lindsey holding applies to this case, provided that expert testimony remains within the bounds of that rule. Gov. Opp. at 1. However, the Government takes issue with Prof. Martin's proffered report insofar as it "seems to purport to testify that statements that were otherwise material in the industry were intentionally disregarded by lenders because of the securitization process and economic self-interest." Id. at 5. It argues that this kind of testimony violates Lindsey by "providing an opinion on the industry practice of intentionally disregarding lending standards[;] it is the lending standards in the mortgage industry that may be testified about, not the practices of individual lenders as to whether those standards were followed." Id.

The Lindsey decision is not as limited as the Government contends. The Ninth Circuit explained:

> Among other things, defendants can disprove materiality through evidence of the lending standards generally applied in the mortgage industry. For example, defendants can offer testimony about the types of information, such as household income or assets, that lenders typically consider, as well as evidence of how much weight the industry generally gives to statements about such information. As long as defendants do not stray into evidence of the

2

> behavior of individual lenders . . . defendants may attack materiality though industry practice.
>
> To illustrate, suppose a defendant is charged with wire fraud for falsely stating on a loan application that he was married. In such a case, it would be admissible for a defense expert to testify that, while mortgage applications usually ask about marital status, the general practice in the industry is to ignore marital status when making lending decisions. The defendant could then argue in closing that his false statement about marriage was immaterial, and so the elements of wire fraud have not been proven. By contrast, a district court could properly exclude evidence that (a) the particular lender to whom the defendant lied did not generally give weight to marital status when deciding whether to lend, or (b) there were prior instances in which that lender did not consider marital status in making loans.

Id. at 1016. The above-quoted explanation and illustration show that testimony regarding industry practices of ignoring certain information in a loan application is admissible. This sort of testimony may implicate the behavior of lenders in a given case, but it does not stray into testimony about any particular lender. In an unpublished decision, the Ninth Circuit again condoned testimony on industry practices when it found that the district court should have allowed expert testimony explaining that "competition in the lending industry in the mid-2000s led lenders to lower their standards for issuing loans," that underwriting standards "were largely a façade to which the lenders would make substantial exceptions in order to issue more loans," and that "lenders were making these loans even when it was apparent that the borrower had poor credit or was not accurately reporting his or her income." United States v. Green, No. 15-10554, 2017 WL 2703804 (9th Cir. June 22, 2017). The portion of Prof. Martin's report the Government objects to in this case is the type of

3

expert testimony that the Ninth Circuit condoned in Lindsey and again in Green. The Court thus rejects the Government's argument that the identified testimony is prohibited.

The Court finds Prof. Martin's testimony, generally, is relevant and admissible under Lindsey. That testimony will be limited to the subjects permitted under Lindsey and to those matters to which Prof. Martin is competent to testify as determined in a Daubert hearing, addressed below. Any additional Government objections will be taken up at that time.

## II. DAUBERT HEARING

The purpose of a Daubert hearing is to test the reliability and relevancy of expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999). "Where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" Id. (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993)).

The Government asks the Court to hold a pretrial Daubert hearing to test Prof. Martin's qualifications and the basis of his proffered opinion. Attached to his Reply, Defendant Rodriguez offers an amended report, which includes additional paragraphs that address Prof. Martin's reputation in the field and the basis of his opinion.

Prof. Martin is an academic with some background in mortgage industry litigation and as a licensed real estate broker in

4

California.  Martin Report, ECF No. 586-1, ¶ 4.  He has written and spoken about the mortgage industry.  Id.  He states that his proffered testimony is based on his "knowledge, skill, training, and education in the field" and cites the sources that his opinion derives from.  Id. ¶ 6.

The Court agrees that Prof. Martin's qualifications on this particular subject and the basis of his opinions should be inquired into further before the trial begins.  The Court will thus hold a Daubert hearing at 9:15 A.M. on September 11, 2017, before trial commences.

### III.  ORDER

For the reasons set forth above, the Court GRANTS Defendant's Motion in Limine, with the limitations described.  The Court also GRANTS the Government's request for a Daubert hearing.

IT IS SO ORDERED.

Dated:  September 1, 2017

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

5