UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>RUBEN RODRIGUEZ and JAIME MAYORGA,<br><br>    Defendants. | No. 2:11-cr-296-JAM<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |

This matter is before the Court on Defendants' Motion to Dismiss the case as barred by the Double Jeopardy Clause of the Fifth Amendment. For the reasons set forth below, Defendants' Motion is DENIED.

I.   FACTUAL BACKGROUND

This case involves a complex mortgage fraud scheme that Ruben Rodriguez and Jaime Mayorga allegedly conspired with five other defendants to execute. ECF No. 1. Defendants Rodriguez and Mayorga were first tried, together, over several weeks (15 court days) in October and November of 2016. See ECF Nos. 375–450. After three days of deliberations, the jury was unable to

1

reach a verdict and the Court declared a mistrial. ECF No. 459. The presiding judge, Judge Shubb, recused himself from the case and the case was randomly reassigned to me. ECF No. 472.

Leading up to second trial, the parties filed eight motions in limine. ECF Nos. 574-579, 589, 610. As the trial judge, I granted Defendant Rodriguez's motion to admit expert evidence of mortgage lending industry standards and set a <u>Daubert</u> hearing for Defendants' expert. ECF No. 594. I also conducted a hearing the morning of September 11, 2017, Gov. Exh. 1, and ruled that Defendants' expert Shaun P. Martin could testify as an expert on the subjects permitted under <u>United States v. Lindsey</u>, 850 F.3d 1009 (9th Cir. 2017).

That afternoon, the jury was empaneled. ECF No. 613. During voir dire, I informed the jury that the trial would take about three weeks, possibly into the first week of October. <u>See</u> Gov. Exh. 2 at 11. Three days of trial occurred from September 13th to September 15th. ECF Nos. 617, 619, & 621. On Sunday September 17th, I took ill and was hospitalized the next day. Gov. Exh. 7 at 3-4. The Courtroom Deputy informed the parties that trial would not proceed on Monday, September 18, 2017. Gov. Exh. 4. I remained in the hospital for the full week and trial was continued to the following week. <u>See</u> Gov. Exhs. 5 & 7 at 3. On Thursday, September 21, 2017, at my request, my Courtroom Deputy advised counsel that a mistrial may need to be declared. Gov. Exh. 6. The parties filed briefs on the mistrial question. ECF Nos. 626 & 627. Defendant Rodriguez objected to the mistrial. ECF No.627. The next day, the parties were ordered to appear before Judge Morrison England the following Monday for a

2

hearing to determine how the case would proceed, citing Federal Rule of Criminal Procedure 26.3. ECF No. 628.

The parties appeared before Judge England on September 25, 2017. ECF No. 629. Judge England put the circumstances of my health and the Court's attempts to find a substitute district judge into the record. Gov. Exh. 7 at 3-4. He explained that he had visited me in the hospital, that I had been released from the hospital on Friday September 22, but that I would need to continue receiving treatments in order to fully recover and that I had been told not to go back to work for (at least) a week or two. Id. Judge England further explained that my Courtroom Deputy inquired with all the district judges in Sacramento to see if they could step in to take over the case. Id. However, no judge was available to substitute—as provided under Fed. R. Crim. P. 25(a)—due to their schedules and the complexity of the case. Id. Judge England noted that another district judge might be able to substitute in three months, but at that point I would likely be recovered and able to preside over the trial. Id.

Judge England asked the parties to propose alternatives to declaring a mistrial. Id. at 5-8. Defense counsel suggested Judge Shubb substitute as the presiding judge because he had previously heard the case. Id. at 8. The Court noted that Judge Shubb had recused himself from the case; the recusal order states that Judge Shubb would be unavailable to try the case a second time. ECF No. 472. Still, Judge England took a brief recess to find out if Judge Shubb could substitute as the presiding judge. See Gov. Exh. 7 at 10. Judge England returned and informed the parties that Judge Shubb was unavailable. Id. After inquiring,

again, whether or not there were additional alternatives, Judge England determined that there was a manifest necessity to declare a mistrial and so declared. Id.; ECF No. 629. Defendants did not consent to the mistrial, but neither Defendant raised additional objections to Judge England's representations or findings. Gov. Exh. 7 at 10-11.

The parties scheduled a Status Conference for October 3, 2017. ECF No. 629. Defendant Rodriguez filed a Motion to Dismiss on Double Jeopardy grounds, ECF No. 633, in which—it appears—Defendant Mayorga joined, ECF No. 640. The Government opposed the motion. ECF No. 641. At the Status Conference on October 3, 2017, I informed the parties that I had only returned to work in a limited capacity, was still receiving treatment, and was only coming into the court for a few hours a day, three days a week. See ECF No. 642. I did not return to work full time until October 16, 2017.

## II. OPINION

"Criminal defendants have a right to have the jury first empaneled to try them reach a verdict." United States v. Bonas, 344 F.3d 945, 947-48 (9th Cir. 2003) (citation omitted). "If a case is dismissed after jeopardy attaches but before the jury reaches a verdict, a defendant may be tried again for the same crime only in two circumstances: (1) if he consents to the dismissal; or (2) if the district court determines that the dismissal was required by 'manifest necessity.'" Id. "The decision whether to grant a mistrial is reserved to the broad discretion of the trial judge[.]" Renico v. Lett, 559 U.S. 766,

4

774 (2010). "Before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." Fed. R. Crim. P. 26.3.

The Court complied with Rule 26.3 by bringing the parties in and providing each an opportunity to comment, object, and suggest alternatives to a mistrial. The Court considered the only proposed alternative and consulted with Judge Shubb as to whether he could substitute as the presiding judge.

Defendants contend that under United States v. Bonas, the Court could not declare a mistrial without a formal record. 344 F.3d 945 (9th Cir. 2003); Mot. at 8. The grounds for mistrial in Bonas, however, were not similar to those in this case and the Bonas Court's analysis was limited to the unique facts before it. In Bonas, the district judge declared a mistrial because four of the jurors were not going to be compensated for their jury service on a three day trial and the judge was concerned that fact would adversely affect the parties by compromising the jurors' impartiality. Bonas, 344 F.3d at 947. The only evidence of these facts was the district judge's say-so. See id. ("The judge explained that he had investigated the matter and determined that four of the jurors were not being compensated by their employers. . . . The judge expressed concern that forcing the jurors to serve without pay would 'adversely affect the parties' and undermine the likelihood of a fair trial."). When the judge proposed declaring a mistrial, the defendant objected and the government took a neutral position. Id. The government then "urge[d] the district judge to 'just utter the magic words,

that the court finds that manifest necessity exists[,]'" to which the judge replied "'I certainly will find that, yes' and declared a mistrial." Id.

The Ninth Circuit determined that the Bonas trial judge should have questioned the jurors, on the record, to establish the fact that they would not be compensated and to inquire whether or not they could serve as impartial jurors despite the lack of compensation. Id. at 949 ("A formal record must be present, however, when the issue is communications with the jurors themselves."). The Circuit explained: "The jurors' ability to serve impartially for the remainder of the trial is at the heart of the district judge's determination of manifest necessity, yet, without a record of what they actually said and thought, we have no way of reviewing whether the district judge's decision to declare a mistrial was a sound exercise of discretion." Id. There was no evidence that the jurors were unwilling or unable to put aside their financial concerns, especially because the trial was estimated to last only three to four days, two of which already passed. Id. at 950. Instead, the Circuit indicated that the jurors should have "been brought into court, singly or as a group, and questioned about their financial situation and willingness to proceed despite any hardship." Id. Had the district judge reached the manifest necessity finding after questioning the jurors on the record, the Circuit would defer to the judge's determination. Id. at 951. The Circuit thus reversed and remanded for dismissal of the indictment with prejudice. Id.

Though instructive, the Bonas decision does not require

dismissal of this case.  First, the <u>Bonas</u> case did not involve a judge's illness, a question of whether other judges could substitute in a trial that involved complex and unique issues, or an indefinite continuation of trial.  Second, the Circuit's reasoning—contrary to Defendants' assertions—supports the Court's manifest necessity determination.  As the <u>Bonas</u> Court explained:

> There may well be peripheral factual matters a district judge may rely on without making a formal record—for example, matters pertaining to the internal operation of the court.  Thus we readily accept some of the judge's statements pertaining to internal court communications and procedures . . . . Similarly, we accept the district judge's description of the efforts he made to obtain compensation for the jurors.  Even the calls to the jurors' employers might be adequately documented by the district judge's representation that the employers were contacted by court staff and definitively refused to pay.

<u>Id.</u> at 949.  The facts of a district judge's illness, his inability to return to trial for an indefinite period of time, and the Court's internal efforts to find another district judge to take his place are precisely the sort of representations the Court may put into the record and rely upon in finding manifest necessity without calling witnesses.  As the Government suggests in its Opposition, at 8, a contrary finding would obligate district judges to take the stand to testify about their own personal health and schedules, or require court personnel to testify concerning confidential, internal court communications between judges and court staff.  The <u>Bonas</u> Court's analysis does not extend so far.

A district judge's illness and the resulting delay in trial may be grounds for a mistrial.  <u>United States v. Lynch</u>, 598 F.2d 132, 135 (D.C. Cir. 1978) ("[T]he trial judge's inability to

continue the trial [due to illness] had necessitated a two-week delay before mistrial was declared. During this period, the jury was at large. . . . These considerations, set forth by Judge Oberdorfer, are supportive of a declaration of a mistrial based on manifest necessity."); see also Bretz v. Crist, 546 F.2d 1336, 1348 (9th Cir. 1976) ("The Count II mistrial does not conveniently appear under the rubrics of the classic mistrial cases hung jury, juror disqualification, tactical exigencies of a wartime court-martial, or prolonged illness or incapacity of judge, counsel or witnesses."). In this case, I was hospitalized and then required continuing treatment, necessitating a trial interruption of at least two to three weeks, though there was no date certain for my return to the bench in a capacity under which the trial could continue. No other district judge was available to substitute. The case involves a complex mortgage fraud scheme; the previous trial took fifteen trial days plus three days of deliberations. I was intimately familiar with the motions in limine, the Daubert proceedings, the testimony and rulings that occurred in the first three days of trial, the jurors, and the parties. Although the jurors were not polled, the impact of the long interruption on the jurors is self-evident. The jurors were told the trial would wrap up by the first week in October; the delay would push the trial out at least until the end of October and very likely much further down the road, keeping the jurors hanging in limbo in the interim. See Lynch, 598 F.2d at 135 ("The jury had been selected on the basis of a reasonable expectation of discharge by December, mid-December at the latest. This raised the additional problem that the jury might be subject

to additional pressure resulting from a desire to decide the case expeditiously."). The jury was not sequestered and the Court takes judicial notice of the fact that the jury would be subject to outside pressures and influences during the indefinite break. The Court also takes notice that the long delay would increase the possibility of juror non-compliance with the Court's admonitions, which are designed to ensure a fair trial. Further, given the nature of the case, the long interruption necessarily threatened the jurors' memories and comprehension of the complex issues and facts in play.

Given the totality of the circumstances, I fully concur with the conclusion reached by Judge England and also find that there was, indeed, a manifest necessity to declare a mistrial. Under Bonas, therefore, the Double Jeopardy Clause does not bar retrial of Defendants.

III. ORDER

For the reasons set forth above, the Defendants' Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Dated: October 18, 2017

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE